## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, Trustee,<br><br>Plaintiffs,<br><br>v.<br><br>ST. JOSEPH PACKAGING, INC., a Missouri corporation; CHADBRUCK, INC., a Missouri corporation; and BAGS & BOXES II, INC., a Missouri corporation,<br><br>Defendants. | No. 10 C 950<br><br>Judge William J. Hibbler<br>Magistrate Judge Sheila Finnegan |

## MEMORANDUM OPINION AND ORDER

Plaintiffs the Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Howard McDougall, Trustee, (collectively, "Central States"), filed this lawsuit seeking to recover an interim withdrawal liability payment of more than $7.8 million under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* Currently before the Court is Central States' motion for a protective order striking certain discovery requests propounded by Defendants St. Joseph Packaging, Inc. ("St. Joseph Packaging"), Chadbruck, Inc. ("Chadbruck") and Bags & Boxes II, Inc. ("Bags & Boxes"). Central States contends that Defendants must seek the discovery--and raise the defenses to which that discovery relates--in a pending arbitration proceeding rather than before the district court. For the reasons set forth below, the motion is granted.

## BACKGROUND

**A.     Underlying Dispute and the Arbitration Proceeding**

Defendant St. Joseph Packaging was a party to a collective bargaining agreement with a local union affiliated with the International Brotherhood of Teamsters, and was required to make contributions to the Pension Fund on behalf of certain employees. On October 31, 2009, St. Joseph Packaging ceased operations and completely withdrew from the Pension Fund. At that time, Defendant Chadbruck owned at least 80% of the total combined voting power of all classes of St. Joseph Packaging stock pursuant to an asset sale. Chadbruck also owned at least 80% of Defendant Bags & Boxes stock.

Under ERISA, "employers who withdraw from pension plans must still pay their proportionate share of the 'unfunded vested benefits.'" *Central States, Southeast and Southwest Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1014 (7th Cir. 2001). "This withdrawal liability ensures that the financial burden of [the] employees' vested pension benefits will not be shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation ["PBGC"], which insures such benefits." *Id.* (internal quotations omitted).

Following St. Joseph Packaging's complete withdrawal, Central States determined that the company, along with Chadbruck and Bags & Boxes (collectively, "Defendants") constitute a single employer under 29 U.S.C. § 1301(b)(1), and are jointly and severally liable for a withdrawal liability payment of $7,805,334.78. Central States sent a notice and demand for full payment on January 19, 2010, declining to accept a monthly payment schedule in light of St. Joseph Packaging's liquidation and asset sale. (Doc. 33-1, Ex. A.) Under the MPPAA, once an employer receives notice of liability and demand for payment,

2

"it must begin paying according to the schedule." *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 595 (7th Cir. 2008). An employer who disagrees with a withdrawal liability assessment may initiate arbitration proceedings, but this "does not suspend the employer's obligation to pay." *Bomar Nat'l*, 253 F.3d at 1015 (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994)). Rather, the MPPAA establishes a "pay now, dispute later" scheme that "places a premium on prompt payment" pending a determination on liability. *Id.*; *Chicago Truck Drivers*, 525 F.3d at 595. The Seventh Circuit has explained that "[t]his provision serves the dual purpose of reducing the risk that an employer will not pay and of encouraging speedy adjudication by requiring immediate arbitration before the courts become involved in the merits of the dispute." *Id.*

Defendants failed to pay any amounts due after receiving the notice and demand for payment. They did, however, send Central States a Request for Review, contending that the maximum statutory withdrawal liability was only $3,941,229, rather than $7,805,334.78. Central States disagreed and denied the Request for Review, which led Defendants to initiate an arbitration proceeding challenging the merits of the withdrawal liability assessment. That proceeding is ongoing, and the parties expect to file their respective briefs on November 12, 2010. (Doc. 34-3.)

**B.    The Lawsuit in Federal Court**

Central States filed this court action because Defendants have failed to make the up front interim payment that is required pending the outcome of the dispute through arbitration. *Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 118 (7th Cir. 1991)

3

(the MPPAA "calls on the employer to pay 'notwithstanding' contentions that may prevail in the end," putting "payment ahead of decision.") Under the statute, if the employer does not make the interim payment, then the pension fund may file a lawsuit seeking not only the payment but also interest and attorneys' fees. This puts the employer in a difficult situation. To avoid "gut[ting] the MPPAA 'pay now, dispute later' scheme, [the Seventh Circuit] has strictly limited the situation in which an employer could avoid interim liability: the employer must establish 1) that the pension fund's claim is frivolous and 2) that imposing interim liability would cause irreparable harm." *Bomar Nat'l*, 253 F.3d at 1019 (citing *Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Rentar Indus., Inc.*, 951 F.2d 152, 155 (7th Cir. 1991), and *Central Transport*, 935 F.2d at 119). As the *Bomar* court noted, it is "a difficult standard to meet, and . . . meant to be that way." *Id*.

On October 4, 2010, Central States filed a motion for summary judgment in this action. The district court has not yet set a briefing schedule.

**C**. **Discovery Requests and Motion for Protective Order**

On September 9, 2010, Defendants served several broad discovery requests seeking information that they contend is relevant to the issues to be decided by the district court. Defendants seek a copy of the complete administrative record provided to the Trustees when they reviewed Defendants' Request for Review, as well as related notes, minutes, questions, notifications, and evaluations. Defendants also seek cases and research regarding whether the assets and operations of Chadbruck and Bags & Boxes are under common control with St. Joseph Packaging, as well as documents supporting Central States' assessment of withdrawal liability. Finally, Defendants want Central States to make

4

admissions regarding the establishment of withdrawal liability. (Doc. 29-1.) Rather than respond, Central States filed the pending motion for a protective order, asserting that the requests all relate to matters to be decided in the arbitration.

## DISCUSSION

The issues to be litigated before the district court are quite narrow. As noted, under the Seventh Circuit's holding in *Bomar*, the district court may find that Central States is not entitled to the interim payment only if Defendants establish "1) that the pension fund's claim is frivolous and 2) that imposing interim liability would cause irreparable harm." 253 F.3d at 1019. With this in mind, the Court turns to the discovery requests at issue.

As a preliminary matter, it does not appear that any of the discovery requests seek information that goes to the issue of irreparable harm. While Defendants argue that they will be forced into bankruptcy if required to make an interim payment of $7.8 million, (Doc. 33, at 6), they do not contend that they need discovery from Central States in order to learn facts that will allow them to assert this defense to the district court.

Defendants do, however, contend that the discovery requests seek information that is needed to demonstrate that the claim by Central States is frivolous. Examination of the discovery requests, and the arguments that Defendants intend to offer in opposition to summary judgment, belies this. Defendants have served broad discovery that seeks (among other things) "all documents supporting, referring to, or relating to the Pension Fund's assessment of withdrawal liability against Defendants." (Doc. 29-1, at 8.) The interrogatories seek to learn such information as what the Board of Trustees reviewed; whether minutes, notes or other documents were taken at the meeting when the Board of Trustees acted upon Defendants' Request for Review; whether any Trustees asked

5

questions of the Pension Fund staff that presented information on the Request for Review, and what the questions were; whether the Pension Fund provided advance written notice to Defendants of the meeting when the Board acted on the Request for Review. (Doc. 29-1, at 3-4.)

Defendants attempt to justify this broad discovery by arguing that "the court may be required to address whether the pension fund's assessment of liability is arbitrary or capricious." (Doc. 33, at 5.) From this flawed premise, Defendants posit that they may avoid the interim payment by demonstrating to the district court that the evidence relied upon by Central States in making the withdrawal liability claim was not sufficient or reliable, or that the process was flawed because evidence from Defendants was not considered before Central States made its decision. (*Id.*) But none of the three cases Defendants cite in support of using an "arbitrary or capricious" standard involved the review of a claim for an interim withdrawal liability payment under the MPPAA.[1] As noted previously, the Seventh Circuit has squarely held that the only questions to be decided in the district court at this juncture are whether the Pension Fund's claim is frivolous, and whether payment would result in irreparable harm to Defendants. Since the discovery that has been served is not necessary in order to argue either issue in opposition to summary judgment, the

---

[1] *See Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (applying arbitrary and capricious standard to review of plan administrator's decision to deny the plaintiff's claim for long-term disability insurance benefits); *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992) (same); *Wisconsin UFCW Unions & Employers Health Plan v. Woodman's Food Market, Inc.*, 348 F. Supp. 2d 1005, 1008-09 (E.D. Wis. 2004) (in action to recover delinquent withdrawal liability payment, court applied arbitrary and capricious standard of review to plan trustees' decision that contributions were due).

Court is unwilling to allow Defendants to move ahead with discovery on two tracks: here and in the arbitration.

Trying another tactic, Defendants argue that their discovery requests seek information related to legal issues that the district court should address on summary judgment without deferring to the arbitration process. Defendants concede that "normally it is preferable for a court to defer making a decision to await a ruling in arbitration." (Doc. 33, at 6.) *See, e.g., Central States Southeast and Southwest Areas Pension Fund v. American Industrial Assurance Co.*, No. 04 C 5655, 2005 WL 483427, at *3 (N.D. Ill. Feb. 28, 2005) ("[a]rbitration is the preferred method for resolving pension plan disputes and failure to arbitrate may have adverse consequences.") Defendants also recognize that courts have applied the arbitration requirement to requests for reductions in withdrawal liability under 29 U.S.C. § 1405. *Id.*; *American Industrial Assurance*, 2005 WL 483427, at *3. Defendants argue, however, that courts may bypass arbitration when presented with a question of statutory interpretation that does not implicate disputed facts or mixed questions of fact and law. (Doc. 33, at 6-7.)

In support of this position, Defendants rely on *Central States, Southeast and Southwest Areas Pension Fund v. Johnco, Inc.*, 694 F. Supp. 478 (N.D. Ill. 1988), in which the defendants sought to avoid the arbitration exhaustion requirement by claiming that they were raising "purely questions of statutory construction." *Id.* at 481. While the court ruled against the defendants, it acknowledged one Second Circuit decision supporting the view that such an exception exists, *T.I.M.E.-DC., Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Int'l Longshoremen's Ass'n*, 756 F.2d 939 (2d Cir. 1985); however, the *Johnco* court found this exception inapplicable to the defendants' challenge to the

amount of withdrawal liability. *Id.* The court explained that the amount of liability "will vary depending on whether the Section 1405 limitations apply," which "is necessarily a question involving both factual issues and statutory interpretation." *Id.*

Defendants argue that unlike in *Johnco*, there are two issues of statutory construction the district court can and should address without waiting for a ruling in arbitration. The first issue is "whether an 'employer,' as that term is used in the withdrawal liability provisions of MPPAA, . . . constitutes only the company that had a contractual obligation to contribute to the pension fund (*i.e.*, St. Joseph Packaging) or also includes any trade or business under common control under Section 1301(b)(1) (*i.e.*, Chadbruck and Bags & Boxes)." (Doc. 33, at 7.) The second issue is "whether an employer that incurs complete withdrawal liability because of a bona fide sale of its assets to an unrelated third party is entitled to relief under [§ 1405(a)] even if the employer is 'insolvent,' as that term is defined by [§ 1405(b)]." (*Id.* at 7-8.) Defendants make several substantive arguments regarding the definition of "employer" and the proper weight to give PBGC Opinion Letters, and they assert that the district court should resolve these two issues on summary judgment. They then insist that the disputed discovery requests are directly relevant to those issues. The Court disagrees.

First, it is undisputed that the parties are currently briefing these exact same statutory questions in arbitration. (Doc. 34, at 3.) In their Request for Review, Defendants contested the assessed $7.8 million withdrawal liability amount as inconsistent with § 1405. Defendants explained that § 1405(a) applies when an employer withdraws from a pension plan after a "bona fide sale of assets . . . in arms-length transaction to unrelated party," and that § 1405(b) applies when an "insolvent employer undergo[es] liquidation or

dissolution."[2]  Central States denied the Request for Review, finding that subsection (a) does not apply in this case, and that under subsection (b), the Pension Fund is entitled to "pursue amounts beyond the original 50% that were not reserved for other creditors." (Doc. 33-1, Ex. E, at 2.)  These issues ultimately will be resolved in the pending arbitration.  In the Court's view, the fact that the parties already are litigating these issues in the arbitration (with briefs due on November 12, 2010) greatly undermines Defendants' unsupported assertion that "[r]eferring these issues to arbitration will not promote judicial economy." (Doc. 33, at 8.)

Second, the applicability of § 1405 in this case arguably turns on not only statutory questions, but also factual ones such as whether St. Joseph Packaging sold substantially all of its assets, and what constitutes the proper valuation of the relevant assets.  *See Johnco*, 694 F. Supp. at 481 ("[W]hether the Section 1405 limitations apply . . . is necessarily a question involving both factual issues and statutory interpretation.")

Finally, Defendants have failed to explain how any of the information sought in the discovery requests is necessary in order to develop or resolve these statutory questions. Indeed, if the issues are purely statutory legal issues as Defendants contend, then they should not require any factual discovery.  For all of these reasons, this Court finds that the discovery requests that Defendants have served in this action do not seek information that

---

[2]  Based on their interpretation of the law, Defendants calculated the maximum statutory withdrawal liability available to Central States under § 1405 as:  (1) $41,229 under subsection (a), representing 30% of the liquidation value of St. Joseph Packaging; and (2) $3.9 million under subsection (b), representing "50 percent of the unfunded vested benefits allocable to the employer" ($7.8 million ÷ 2).  29 U.S.C. § 1405(a) and (b); (Doc. 33-1, Ex. B.)

is relevant to the issues to be decided by the district court. Accordingly, the Court grants Central States' motion for entry of a protective order.

**CONCLUSION**

For the reasons stated here, Central States' Motion for Entry of Protective Order [29] is granted.

ENTER:

Dated: November 4, 2010

_____
SHEILA FINNEGAN
United States Magistrate Judge